In re Michael HOGAN, Debtor.

Dominick D'AGATA, Plaintiff,

v.

Michael HOGAN, Defendant.

Bankruptcy No. 93–61202.
Adv. No. 93–70123.

United States Bankruptcy Court,
N.D. New York.

Feb. 24, 1995.

Dominick D'Agata, Clay, New York, pro se.

Anthony Inserra, Watertown, New York, for debtor.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This adversary proceeding was commenced upon the complaint of Dominick D'Agata ("Plaintiff"), filed on July 26, 1993, against Michael L. Hogan, d/b/a Hogan Contracting and Remodeling, d/b/a Gold Star Sports ("Debtor"). Plaintiff seeks a determination of the dischargeability of a debt pursuant to §§ 523(a)(4) and (a)(6) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") and objects to the discharge of the Debtor pursuant to Code § 727(a)(3).[1]

A trial was held on December 14, 1994. Plaintiff had been represented by counsel at the time the complaint was filed. However, due to a conflict of interest, Plaintiff's counsel moved to withdraw and the motion was granted pursuant to an Order of the Court dated May 16, 1994. At the trial, Plaintiff elected to represent himself on a *pro se* basis. Both parties were afforded an opportunity to file memoranda of law, and the matter was submitted for decision on January 18, 1995.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(I) and (J).

### FACTS

Plaintiff testified[2] that he had known the Debtor and the Debtor's mother, Jean Hogan ("J.Hogan"), for approximately 30 years and had formed a close relationship with J. Hogan. Sometime in 1992, Plaintiff agreed to invest in a sports store the Debtor wished to open. At the time, the Debtor was also operating a construction business under the name "Hogan Contracting and Remodeling." According to the Plaintiff, he was to be a silent partner in Gold Star Sports ("GSS"), and both he and the Debtor had agreed that each would invest $20,000 in the business. However, there was no written agreement executed by the two parties to that effect. The Debtor denied any such financial arrangement, but did acknowledge that he had received monies from the Plaintiff. In addition to $7,000, which Plaintiff had used to purchase equipment for GSS, Plaintiff testified that he had turned over a check for $52,250 to the Debtor in March of 1992 with the intention that approximately $13,000 would be used to purchase inventory. The balance of the monies was to be temporarily available to the Debtor for use in establishing the business.

1. Plaintiff's complaint refers to a cause of action pursuant to Code § 727(a)(A)(3), which does not exist. The narrative of the complaint, however, alleges that the Debtor has concealed, destroyed and/or failed to properly maintain records with respect to his businesses and business accounts, making it clear to the Court that the Plaintiff is seeking relief pursuant to Code § 727(a)(3).

2. Because of Plaintiff's *pro se* status, the Court allowed him to read a statement summarizing the events into the record.

Plaintiff testified that he had seen an entry in the ledgers for GSS indicating a deposit of $52,250. However, Plaintiff also testified that subsequently when he asked to examine the books of GSS, he had been denied access to them. He also testified that he had been given no notice when the Debtor decided to close down the GSS store in the latter part of 1992.

Plaintiff also testified that he had asked the Debtor to have five biweekly installments of $7,000 withdrawn from the GSS account in which the Debtor had deposited the $52,250 advanced by the Plaintiff. These monies, totalling $35,000, were to have been deposited into a separate account in the name of J. Hogan ("J. Hogan account"). The monies were to be used to pay for building supplies in the construction of a house on Woodland Drive in Monroe, New York. Plaintiff acted as the contractor on the house, which was intended to be Plaintiff's and J. Hogan's residence. Plaintiff testified that he had arranged to have the property deeded to J. Hogan because of difficulties he had had with the Internal Revenue Service ("IRS") in 1991, which resulted in the loss of Plaintiff's business/building. Against the advice of his attorney, Plaintiff also testified that he had elected not to execute an agreement requiring that J. Hogan turn the property back over to him upon request.

Construction on the house on Woodland Drive commenced on or about July 26, 1992. Building supplies were delivered by Giarrusso Building Supplies, Inc. ("Giarrusso") and billed to Hogan Contracting and Remodeling. It was Plaintiff's testimony that he had received assurances from the Debtor that although the $35,000 had not been deposited into a separate account to pay for the building supplies, the Debtor intended to obtain the money to settle the account with Giarrusso. However, the Debtor testified that no monies were forthcoming as GSS never generated any profits.

In November, 1992, Plaintiff testified that he had been notified by Giarrusso that although the supplies had been delivered to the Woodland Drive property there had never been any payment made and that approximately $46,000 was due and owing. Despite a request by Plaintiff to delay placing a lien on the property at Woodland Drive, Giarrusso eventually filed a lien that same month. A second lien was allegedly filed by the Plaintiff in December 1992, as contractor on the house in the amount of $167,000, which was later reduced to $75,000. Plaintiff testified that he had filed the lien after J. Hogan had refused to transfer the property back to him. At some point, the real property was sold for approximately $110,000 to satisfy the liens. According to the Plaintiff, who was not present at the closing, Giarrusso received $46,000 in payment for the building supplies; J. Hogan received $5,000 in repayment of a loan previously made to Plaintiff and the IRS received approximately $43,000 allegedly as a result of a tax lien on Plaintiff's interest in the property, specifically the lien Plaintiff had filed against the property as contractor.

The Debtor filed a petition ("Petition") seeking relief pursuant to Chapter 7 of the Code on April 19, 1993. In Schedule "F" of the Petition, Debtor listed an unsecured claim of $54,000 owed to the Plaintiff. In his complaint, Plaintiff seeks a judgment in the amount of $35,000.

## ARGUMENTS

Plaintiff makes the argument that the Debtor has misappropriated $35,000 which had been earmarked for use in the construction of the house on Woodland Drive. Plaintiff asserts that the Debtor was unable to provide any record of deposits or receipts from the business to prove Debtor's contention that the business generated no profits. In particular, Plaintiff alleges that the Debtor diverted approximately $33,000 from the account of GSS by issuing checks made payable to "Cash". Said monies, Plaintiff contends, should have been used to pay Giarrusso for the supplies used at the Woodland Drive site and instead were allegedly converted by the Debtor to his own use. Plaintiff also alleges that Debtor misrepresented his ability to pay for the supplies.

In response, Debtor denies having misappropriated any monies. Debtor asserts that there was never any agreement as to how the $52,250 was to be used. Debtor acknowledged having spent some of the monies to

purchase equipment for GSS, including a computer. As to the checks made payable to "Cash", the Debtor contends that they were all written for legitimate business purposes, and that he has proof of where the monies went "to the penney." [3] Debtor also asserts that as the debt allegedly owed to Plaintiff was for monies that were to be used to pay Giarrusso for building supplies delivered to the Woodland Drive site, therefore the debt was fully satisfied when Giarrusso received $46,000 from the proceeds at the closing on the Woodland Drive property.

## DISCUSSION

■■■ In seeking to have a debt deemed to be nondischargeable pursuant to Code § 523 or to have a debtor denied a discharge pursuant to Code § 727, the Plaintiff must establish the elements of each cause of action by a preponderance of the evidence. *In re Wolfson*, 139 B.R. 279, 285 (Bankr.S.D.N.Y. 1992), *aff'd* 152 B.R. 830 (S.D.N.Y.1993), citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Furthermore, exceptions to discharge are to be narrowly construed in favor of a debtor and against the creditor to effectuate the fresh start purposes of the bankruptcy laws. *In re Verdon*, 95 B.R. 877, 882 (Bankr.N.D.N.Y.1989) (citations omitted).

■■■ Plaintiff's first cause of action, as set forth in his complaint, is based on Code § 523(a)(4). As Plaintiff has not alleged any fiduciary relationship between himself and the Debtor, the Court will focus its analysis on whether Plaintiff has established, by a preponderance of the evidence, that Debtor committed embezzlement or larceny. Embezzlement has been defined as " 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.' " *In re Goux*, 72 B.R. 355, 359 (Bankr.N.D.N.Y. 1987) (quoting *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895)). Larceny is to be distinguished from embezzlement in that larceny involves the " '*wrongful* taking or carrying away of the property of another with intent to convert such property to his[sic] use without the consent of the owner.' " *See In re Langworthy*, 121 B.R. 903, 907 (Bankr.M.D.Fla.1990) (citation omitted) (emphasis added).

Initially the Court concludes, based on the evidence before it, that Debtor has not committed larceny. Plaintiff testified that he had turned over $52,250 to the Debtor voluntarily. There were no allegations that the Debtor's initial possession of the funds was in any way based on a wrongful taking or carrying away.

■■■ As embezzlement is defined, there are two elements that the Plaintiff must prove. He must show (1) that the debtor appropriated monies or property belonging to the plaintiff for his own use and benefit, and (2) that the debtor did so with fraudulent intent. *In re Imbody*, 104 B.R. 830, 841 (Bankr. N.D.Ohio 1989) (citation omitted). Generally, when there is no security interest involved, monies received by a debtor belong to the debtor and their subsequent use by a debtor is not considered embezzlement. *Id., citing In re Koelfgen*, 87 B.R. 993, 998 (Bankr.D.Minn.1988); *In re Storms*, 28 B.R. 761, 765 (Bankr.E.D.N.C.1983).

In this instance, it was Plaintiff's testimony that the entire $52,250 was deposited in the GSS account with his consent. He testified that the monies were available to the Debtor to purchase equipment and inventory, as well as to cover any other expenses that might arise as Debtor established the business. There is nothing before the Court that establishes any fraudulent intent on the part of the Debtor. It was the Debtor's testimony that he had every intention of making the funds available to pay Giarrusso for the building materials. However, he found himself in financial difficulties which resulted in his having to cease operation of GSS and ultimately led to his filing bankruptcy. Indeed, his Petition acknowledged that a debt

---

**3.** Debtor testified that the check stubs were in the possession of the Chapter 7 trustee. The canceled checks, however, were in the possession of the Debtor's former landlord as a result of the Debtor's having defaulted on his lease. Plaintiff acknowledged that he had filed no motions seeking discovery of these items. In fact, he stated to the Court that it was his understanding that the purpose for the trial was to permit discovery.

**146**

was owed to Plaintiff. Accordingly, the Court concludes that there has been no embezzlement on the part of the Debtor, and that portion of Plaintiff's complaint alleging a cause of action based on Code § 523(a)(4) must be dismissed.

 The Plaintiff also claims that pursuant to Code § 523(a)(6), Debtor willfully and maliciously converted property of the Plaintiff to his own use. The embezzlement prong of Code § 523(a)(4) closely mirrors a § 523(a)(6) claim that there has been a willful and malicious conversion of funds. *In re Cook,* 146 B.R. 934, 944 (Bankr.E.D.Pa.1992) (citations omitted). To succeed under Code § 523(a)(6), there must be both intentional conduct on the part of the Debtor and intentional or deliberate injury to the Plaintiff. *See Zachery v. Whalen,* No. 93–CV–36, 1994 WL 411526 at *6 (N.D.N.Y. July 26, 1994) (citations omitted). The court in *Zachery* noted that other courts have concluded that "[i]n enacting § 523(a)(6) Congress regards the described conduct to be so socially reprehensible that indebtedness resulting from it is not worthy of discharge in bankruptcy ..." *Id.* at *7 (citations omitted).

The Court's focus in determining whether fraudulent intent exists is on the acts of the Debtor and the context in which they occurred. In this case, the Debtor testified that it had been his dream to establish a sports store. Plaintiff expressed a willingness to finance that dream, and the Debtor agreed to having Plaintiff as a "silent partner" in the business. Plaintiff testified that he turned over the entire sum of $52,250, expecting to be able to recover $35,000 of the monies in installments to be deposited in a separate account to cover building supplies ordered from Giarrusso for use in the construction of a residence on Woodland Drive. It was Plaintiff's testimony that he fully intended that the monies would be available for Debtor's use in the initial stages of the business. The Plaintiff was aware that the monies had not been deposited on a biweekly basis in the J. Hogan account and he accepted Debtor's assurances that the funds would be available. It is unfortunate that the business did not succeed and that the Debtor found himself without funds to meet the obli-

gation. However, the Court finds there has been no willful and malicious conversion of monies on the part of the Debtor. Therefore, the Court concludes that that portion of Plaintiff's complaint alleging a cause of action based on Code § 523(a)(6) must also be dismissed.

 With respect to a cause of action based on Code § 727(a)(3), a creditor must show (1) that the debtor failed to maintain and preserve adequate records and (2) that such failure makes it impossible to ascertain the debtor's financial condition. *Meridian Bank v. Alten,* 958 F.2d 1226, 1232 (3d Cir. 1992). It is not necessary for a plaintiff to establish an *intent* to conceal information. *In re Pimpinella,* 133 B.R. 694, 697 (Bankr. E.D.N.Y.1991). Nor does the Code require a debtor to maintain an impeccable system of bookkeeping. *Meridian, supra,* 958 F.2d at 1230. The test is whether " 'there [is] available written evidence made and preserved from which the present financial condition of the bankruptcy, and his business transactions for a reasonable period in the past, may be ascertained.' " *Id.,* quoting *In re Decker,* 595 F.2d 185, 187 (3d Cir.1979). The adequacy of a debtor's books and records is to be evaluated on a case-by-case basis. *Pimpinella, supra,* 133 B.R. at 698, citing *In re Underhill,* 82 F.2d 258, 259–60 (2d Cir.), *cert. denied,* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936).

Plaintiff alleges that the Debtor "concealed, destroyed and/or failed to properly maintain records with respect to his business and business accounts." *See* ¶ 16 of Plaintiff's Complaint. Plaintiff acknowledges that at some point he had seen the Debtor's ledgers. Debtor also testified that the Chapter 7 trustee was in possession of certain check stubs from the GSS account. The Plaintiff, however, failed to provide any evidence that might have supported his allegations. The Plaintiff also admitted that he had not made any discovery requests of the Debtor. If there had been such a request and the Debtor had failed to provide any such documentation upon request, the Court would be in a much better position to make a determination that the Debtor had failed to maintain or preserve adequate records in connection with his business. However, based on what is

presently before the Court, no such conclusion can be made. Accordingly, that portion of Plaintiff's complaint alleging a cause of action based on Code § 727(a)(3) must be dismissed as well.

For the reasons stated above, it is

ORDERED that the Plaintiff's complaint, insofar as it seeks nondischargeability of the debt claimed to be owing to the Plaintiff pursuant to Code §§ 523(a)(4) and (6) is dismissed; and it is further

ORDERED that Plaintiff's complaint insofar as it seeks to have the discharge of the Debtor denied pursuant to Code § 727(a)(3) is dismissed.