**In re Roger SCOTT, Debtor.**

**Town of Skaneateles, Plaintiff,**

v.

**Roger Scott, Defendant.**

**Bankruptcy No. 97–63795.**
**Adversary No. 97–70275.**

United States Bankruptcy Court,
N.D. New York.

Oct. 19, 1998.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, NY, James A. O'Shea, Of Counsel, for plaintiff.

Roger Scott, Syracuse, NY, Pro se.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The matters presently before the Court are the latest round in a long legal battle between the chapter 7 debtor, Roger Scott ("Debtor"), and one of his creditors, the Town of Skaneateles, New York ("Town"). On September 25, 1997, the Town commenced an Adversary Proceeding ("Adversary Proceeding") asserting causes of action against Debtor pursuant to § 523 and § 727 of the United States Bankruptcy Code, (11 U.S.C. §§ 101–1330) ("Code"), and in a motion filed on September 29, 1997 ("Contested Matter"), the Town raised an objection under Rule 4003(b) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") to certain real property exemptions claimed by Debtor. Also before the Court is a cross motion ("Cross Motion") filed by Debtor on October 16, 1997, which seeks a holding of contempt against James A. O'Shea, Esq. ("O'Shea"), one of the Town's attorneys, for an alleged violation of the automatic stay. Owing to the considerable number of common issues that these matters share, the Court will dispose of them in the single Decision that follows.

Following a hearing at its regular motion calendar of November 18, 1997, the Court issued a Decision on January 16, 1998, which disposed of several preliminary issues concerning the Contested Matter. In relevant part, the Decision rejected the Town's argument that motor homes could never be used to establish homesteads under relevant state law, and scheduled a further evidentiary hearing on the Contested Matter and the Cross Motion for March 25, 1998. This evidentiary hearing was later adjourned to April 29, 1998, and following the hearing, the Contested Matter and Cross Motion were submitted for decision on May 29, 1998. Pursuant to a Scheduling Order of January 29, 1998, the Court also held a trial in the Adversary Proceeding on May 6, 1998, which was submitted for decision on June 10, 1998.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of both the

adversary proceeding and the contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1), (b)(2)(B), (G), (I), (J), (K), and (O).

## FINDINGS OF FACT

2887 East Lake Road (the "East Lake Road Property") is a 0.36 acre parcel of lakefront property in Skaneateles, New York. At some point prior to 1972, the property was acquired by Debtor, then an attorney, and his wife, Rhoda Scott (collectively, "the Scotts"). Testimony presented at trial indicated that the single-family home ("First Home") that originally stood on the property did not comply with the Town's 1966 zoning ordinance then in effect, but was permitted by a grandfather clause as a preexisting non-conforming use.

In September 1982, the First Home was destroyed in a fire, and the Scotts began construction on a new house ("Second Home,") on the same parcel which was completed in or around 1983. The Second Home soon became the centerpiece of a protracted dispute between the Scotts and the Town, which alleged that the Second Home did not meet the size and setback restrictions of the 1966 zoning ordinance. Several years of litigation ensued and, finally, on September 6, 1989, the Scotts were ordered to remove a three-car garage from the property in a decision by Justice Donald H. Miller of the New York State Supreme Court, Onondaga County. At the same time, however, Justice Miller denied a counterclaim by Town which sought the removal of the remainder of the Second Home.[1] On appeal, the New York State Supreme Court Appellate Division, Fourth Department reversed in part, finding that the entire Second Home violated the 1966 zoning ordinance. *Scott v. Manilla*, 163 A.D.2d 901, 558 N.Y.S.2d 420 (N.Y.App.Div. 4th Dept.1990).

On remand, Justice Miller adopted a proposed order submitted by the attorneys for the Town, which required the Scotts to modify the Second Home into compliance with the zoning ordinance at their own cost. If this proved to be impossible, the Scotts were ordered to demolish the Second Home, with the proviso that they would then be entitled to a building permit to rebuild the home according to the blueprint of the grandfathered First Home. In the event that the Scotts failed to comply, the Town was given the right to enter onto the property and demolish the building at the Scotts' expense.

On September 4, 1991, the Scotts were found to be in contempt of Justice Miller's order in a decision by Justice Thomas J. Murphy of the New York State Supreme Court, Onondaga County. The court imposed a fine of $50 for every day that the Scotts remained in noncompliance, and further authorized the Town to exercise self-help. Over the next two months, Debtor engaged in a series of transfers of his property to the Charlotte L. Scott Trust, an Inter Vivos Trust ("Trust"), which was established in the name of Debtor's late mother. Among these was the sale on October 15, 1991, of a half-interest in undeveloped land in the town of Niles, New York ("Niles Property") to the Trust for one dollar, and the sale of the East Lake Road Property for the same amount on October 21, 1991. The Scotts continued to resist the demolition order until November 24, 1991, when they were forcibly evicted by deputies from the Onondaga County Sheriff's department. Shortly thereafter, the Second Home was demolished at the Town's expense.

Unfortunately for Debtor, his legal troubles were far from over. In January of 1994, an Onondaga County jury returned a felony conviction against Debtor arising out of his last-minute efforts to save the Second Home from the wrecking crew. In

---

**1.** It appears that in the original action, the Scotts were the plaintiff and the Town the defendant. However, by the time of Justice Miller's September 1989 order, all claims by the Scotts had been dismissed and only the Town's counterclaims remained pending.

addition to the automatic loss of his license to practice law, Debtor received a brief prison sentence and was placed under the supervision of the Onondaga County probation department. Meanwhile, the Town continued its efforts to collect its demolition costs, which were fixed pursuant to an order of February 2, 1994, issued by the Honorable Rosemary Pooler, at the time a Justice of the New York State Supreme Court, Onondaga County. Justice Pooler fixed the Town's total damages at $161,-542.52, allocating $48,258 to reimbursement for actual demolition expenses, $8,802 to interest at the statutory rate of 9%, and the remaining $104,482.52 to attorneys' fees and disbursements.[2] The Town also commenced actions to set aside the sales of Debtor's real property to the Trust, and in late 1996 and early 1997, the Niles and East Lake Road transactions were invalidated as fraudulent transfers.

The period leading up to the filing of Debtor's Chapter 7 petition on June 18, 1997 (the "Petition Date") was marked by renewed activity on the East Lake Road Property, which had been vacant since the destruction of the Second Home in 1991. On or about May 31, the Scotts placed a newly-purchased motor home onto to the property, along with a electric generator and a portable toilet. Although the presence of these objects became known in early June to the Town's Zoning Enforcement Officer, Debbie Williams ("Williams"), she took no immediate action against it. Instead, according to her testimony at trial, she decided to wait and see if its presence would be "permanent" before lodging a formal complaint.

On the evening of June 16, 1997, Debtor left a telephone message on the office answering machine of his probation officer, Edward G. Detor ("Detor"), in which he announced that he was moving to the East Lake Road address, effective immediately.

According to the terms of Debtor's probation, he was required to notify Detor of all changes in his residence, which since his release from prison had been at a house at 116 East Main Street in Elbridge, New York.[3] On June 18, the Petition Date, Debtor appeared for a regularly-scheduled meeting with Detor at the latter's office. A major topic of discussion at this meeting was the proposed move back to East Lake Road, which Debtor described as being necessary in order to obtain a homestead exemption in bankruptcy. However, permission for the move was not granted. Detor testified that this decision was based on a suspicion that the Scotts' placement of a motor home on their property would be a violation of local zoning law, but denied that he had any prior communication with Town officials concerning the matter.

The evidence does not clearly indicate whether Debtor in fact spent the night at the motor home on June 16th and 17th. However, Rhoda Scott testified that subsequent to the events of June 18th, 1997, Debtor would generally spend most of every day at the motor home, returning overnight to Elbridge for the sole purpose of complying with the terms of his probation.

Also on June 18, 1997, Debtor filed his Chapter 7 Petition with this Court, although the record does not indicate whether this was done before or after his meeting at the probation office. In pertinent part, the petition listed Debtor's address as 2887 East Lake Road and claimed state-law homestead exemptions for both the Niles property, whose value was scheduled as $4,050, and for the East Lake Road property, scheduled at $5,000.

On June 19, 1997, Williams issued the Scotts an order to remove the portable toilet and the motor home, which were cited as non-permitted uses under the Town's zoning code. Although the motor home was removed on July 2, 1997, it

---

2. Because interest continued to accrue on this judgment up until the Petition Date, the Town's claim is now $209,377.15.

3. The Elbridge property, which is allegedly still owned by the Trust, is not included in Debtor's petition.

reappeared two days later, and Williams accordingly began formal proceedings against the Scotts in Town Court (the "Town Court Action"). In September or October of 1997, the motor home was again moved off the East Lake Road Property, and the Town Court Action was not prosecuted further.[4]

## ARGUMENTS

The Town first argues that Debtor is not entitled to either of his claimed homestead exemptions, as neither property was his principal residence on the date of the petition. Although Debtor does not appear to contest the Town's assertion with respect to the Niles Property (the claimed exemption of which has purportedly been withdrawn), he argues there is sufficient evidence for the Court to find that 2887 East Lake Road became his homestead in June 1997, notwithstanding his enforced overnight absences.[5]

The Town further argues that, based on the evidence of its real estate expert, Debtor's scheduled values for both parcels of real property were so grossly inaccurate as to justify denying him a discharge under the "false oath" provisions of Code § 727(a)(4)(A).[6] In the alternative, the Town asserts that its money judgment can be traced to Justice Murphy's contempt order, and that it is accordingly exempted from discharge by Code § 523(a)(6) (concerning debts arising from malicious inju-

ries) or Code § 523(a)(7) (concerning certain debts owed to governmental units). Although Debtor did not offer expert evidence of his own, he defends the accuracy of the property valuations as scheduled and calls the Court's attention to several alleged flaws in the work of the Town's expert. None of Debtor's pleadings or memoranda appear to respond to the Code § 523 issues.

Finally, Debtor argues that there is evidence to support a finding that the Town Court Action was commenced in bad faith, as it was solely motivated by a desire to defeat Debtor's rights under the Code. The Town disputes this characterization, arguing that the Town Court Action falls into the category of police-power regulation that is not prohibited by the automatic stay.

## DISCUSSION

### A. Debtor's Asserted Homestead Exemptions

■ In Schedule C of his chapter 7 Petition, Debtor attempted to protect both the East Lake Road and the Niles Properties as exempt assets pursuant to § 5206 of the New York Civil Practice Law and Rules ("N.Y.C.P.L.R."). The Court need not concern itself with the claimed homestead exemption for the Niles Property, which appears to be utterly without merit.[7]

---

4. The final event in the Town Court litigation was an order dated January 21, 1998, granting the Town leave to amend its complaint. Debtor asserts that this order amounted to a dismissal, a characterization that the Town disputes. However, Williams testified that no action to amend the complaint has since been taken, as the removal of the motor home in September has mooted the issue.

5. Debtor also places great emphasis on a 1972 declaration identifying the East Lake Road Property as the Scotts' homestead. Since it is undisputed that the Scotts ceased to occupy the property from 1991 until 1997, thus extinguishing whatever prior homestead rights they may have had, the Court is unable to understand the legal relevance of this argument.

6. As alternate grounds for denying Debtor a discharge under § 727, the Adversary Complaint also contained allegations of false statements made by Debtor at the first meeting of creditors. However, the Town was unable to produce a record of that meeting or of any of the statements made there by the Debtor, and as a result, the Court will not address this argument.

7. From the record before the Court, it does not appear that the Debtor nor anyone else has ever used the Niles Property as a residence. On October 28, after the Town had filed its objections in this case, Debtor purported to amend his schedule to drop the exemption claim for the Niles Property. This amendment was unsigned, and has not been docketed by the Court.

40

The Court issued a partial ruling on the question of the East Lake Road Property in its Decision of January 16, 1998, which found that real property occupied only by motor homes could in some circumstances qualify as homesteads under New York law.[8] It now remains for the Court to determine if the particular facts of this case support Debtor's claim of an exemption. Pursuant to Fed.R.Bankr.P. 4003, the burden lies with the Town to prove that the East Lake Road Property is not exempt. *See In re Flatt,* 160 B.R. 497, 500 (Bankr.N.D.N.Y.1993).

Because New York has chosen to "opt out" of the federal exemption scheme pursuant to Code § 522(b)(1), Debtor's asserted right to a homestead exemption is governed exclusively by N.Y.C.P.L.R. § 5206, which provides in pertinent part that real property, "not exceeding ten thousand dollars in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof."

■ In applying this standard, the Court looks to events as they existed on the Petition Date. *See In re Pless,* 202 B.R. 664, 666 (Bankr.N.D.N.Y.1996). However, while events that occurred between the Petition Date and the Trial Date are not directly relevant to Debtor's eligibility for a homestead exemption, the Court may properly consider them to the extent that they are probative of facts as they existed at the earlier date.

■ It is undisputed that Debtor was an owner of the East Lake Road Property on June 18, 1997. The Town accordingly bases its argument on the assertion that Debtor did not "occupy" the property as his "principal residence" for purposes of the statute at the relevant times. While neither of these terms are defined in the statute, this Court has read them to re-

quire actual physical occupancy on a regular basis. *See In re Miller,* 103 B.R. 65, 68 (Bankr.N.D.N.Y.1989). In addition, because a homeowner can have only one principal residence, the alleged homestead must be occupied by the debtor on a more regular basis than any other residence. *Id.*

The Town places great emphasis on the fact that at almost all times after his release from prison, Debtor maintained his legal residence in Elbridge. Based on the testimony of Detor, which was corroborated in relevant part by Mrs. Scott, Debtor's alleged period of full-time occupancy at East Lake Road lasted, at most, from June 16 until June 18, 1997. However, since this brief window of time happens to include the Petition Date, the Court must determine whether a period of occupancy that lasted no more than two days can qualify as a "regular" for purposes of N.Y.C.P.L.R. § 5206.

■ Although New York law does not specify the point in time at which a homestead is established, bankruptcy courts interpreting similar provisions from other states have generally held that a homestead comes into existence when actual physical presence is coupled with an intent to reside there permanently. *See In re Hankel,* 223 B.R. 728, 732 (Bankr.D.N.D. 1998); *In re Lee,* 223 B.R. 594, 598 (Bankr. M.D.Fla.1998). The property thus acquires homestead status the instant both these factors are present, *see Lee* at 599 (holding that a Chapter 7 debtor established a homestead for purposes of Florida law as of the day that actual occupancy began, when coupled with a bona fide intent to make it his permanent residence).

The Town does not dispute Debtor's assertion that he was physically present at the East Lake Road Property on June 17th and at least part of June 18th. The question of Debtor's eligibility to claim a

---

8. An appeal of this ruling by the Town to the Bankruptcy Appellate Panel of the Second

Circuit was dismissed for failure to prosecute on July 26, 1998.

homestead exemption thus hinges on his state of mind as of the Petition Date.

The Town has produced substantial evidence that Debtor did not intend to reside permanently at East Lake Road at the time of the Petition Date. Perhaps the most telling fact is Debtor's own admission to Detor on the Petition Date that he needed permission to move in order to obtain a homestead exemption. Although Debtor's motive is not by itself relevant to his right to establish a homestead, this testimony does cast serious doubt on whether he had a bona fide intention to remain on the East Lake Road Property after the bankruptcy. Secondly, the Debtor's own testimony established that as of the Petition Date, the East Lake Road Property lacked ordinary necessities such as access to public power utilities, running water, and a septic system. While there is no requirement that a plot of land be instantly habitable in order to qualify as a homestead, the Court finds significance in the fact that Debtor apparently took no action to repair or mitigate any of these defects in the summer of 1997. Taken together, the Court finds that these facts create an inference that Debtor did not have a bona fide intention of making 2887 East Lake Road his permanent regular residence as of June 18, 1997. Because Debtor has produced no credible facts to rebut the Town's proof,[9] the Court concludes that he is not entitled to a home-stead exemption on the East Lake Road Property.[10]

### B. The Dischargeability of the Town's Claim under Code § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code exempts from discharge debts "for wilful and malicious injury by the debtor" to another entity or its property. As a preliminary matter, the Court notes that in actions brought under Code § 523(a), the party objecting to discharge—in this case the Town—bears the burden of proof by a preponderance of the evidence standard. See Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 659 112 L.Ed.2d 755 (1991). The Town presumably argues that the underlying act for which Justice Pooler awarded the Town compensation—the Scotts' failure to demolish their own home and the Town's subsequent assumption of the project at its own expense—falls into the class of harms referenced by the language of Code § 523(a)(6). The Court cannot agree with this characterization.

As the Supreme Court held in a recent case, Code § 523(a)(6) applies to debts that arise out of willful injuries, not willful acts that happen to lead to injury. See Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). Thus, in order to trigger the application of Code § 523(a)(6), the Town would have had to prove not merely that the Scotts intended to ignore the Miller order, but

---

9. Debtor has offered into evidence a 1972 document declaring 2887 East Lake Road to be the Scotts' homestead pursuant to a now-repealed provision of New York's homestead exemption statute. Under CPLR § 5206(c), a valid homestead expires whenever actual occupation ceases, unless the suspension of occupation is due to the destruction of the home. Even if the homestead has been destroyed, the exemption will lapse if the property is not reoccupied within one year. In the present case, it is undisputed that the Scotts' occupancy of the East Lake Road homestead was suspended from November 1991 until June 1997, a period of more than one year. As a result, the 1972 declaration has no bearing on the question of whether Debtor had established a homestead as of the Petition Date.

10. The Town also argues that the Court should not recognize East Lake Road as Debtor's homestead in any case, since Debtor's residence at that address would have been in violation of the terms of his probation. See In re Gilman, 68 B.R. 374, 375 (Bankr.S.D.Fla. 1986) (holding that Florida homesteads may not be acquired by persons not legally in the state). Although the evidence on Debtor's residency restriction was not entirely coherent, and no copy of the probation order was entered into evidence, the Court does not need to consider this issue in light of its holding with regard to Debtor's intent.

that they intended the injurious consequence of their behavior—that is, the fact that the Town would have to spend public monies on a demolition project. Nothing in the record supports this theory, especially in light of the Scotts' desperate efforts to prevent the Town from going forward with the destruction. Accordingly, the Town has failed to prove that its injury was malicious.

Even if the Debtor's conduct was malicious, the Town has failed to prove that its claim is compensation for an "injury" within the scope of Code § 523(a)(6). As noted above, the Code speaks to malicious injuries, not malicious acts, and it has long been held that not every legal wrong or harm rises to the level of a nondischargeable injury. *See Davis v. Hamanaka (In re Hamanaka)*, 53 B.R. 320, 322 (Bankr.S.D.N.Y.1985) (holding that the violation of a child custody order is not an injury within the scope of Code § 523(a)(6)). Though courts have on occasion applied Code § 523(a)(6) to intangible or purely monetary wrongs, they have in general done so only when the debtor's acts amounted to a conversion or other interference with a legally-protectable property right. *See D'Agata v. Hogan (In re Hogan)*, 193 B.R. 142, 146 (Bankr.N.D.N.Y.1995). In this case, the only harm which the Town seems to have suffered is that Debtor has refused to pay it for the services (however unwelcome) which Justice Miller authorized it to perform.[11] The Town is no more "injured" than any other creditor that holds an uncollected debt, and as such, Code § 523(a)(6) does not apply here.

### C. The Dischargeability of the Town's Claim under Code § 523(a)(7)

Alternately, the Town asserts that its judgment claim is nondischargeable by operation of Code § 523(a)(7), which exempts from discharge a debt to the extent that it is "for a fine, a penalty, or forfeiture payable to and for the benefit of a governmental unit, *and is not compensation for an actual pecuniary loss.*" (Emphasis added). In the present case, the damages awarded to the Town by Justice Pooler are clearly in the nature of compensation for pecuniary loss. The text of the order allocated the entire amount of the judgment either to reimbursement for direct demolition expenses, legal costs, or interest, and no part of the judgment appears to be in the nature of a "fine, a penalty, or forfeiture." Accordingly, the Town's claim is not exempted from discharge by Code § 523(a)(7).

### D. Denial of Debtor's Discharge under Code § 727(a)(4)(A)

The various grounds for the denying discharge to a debtor are set out in Code § 727(a). Among these is the exception contained in Code § 727(a)(4)(A), which denies discharge to debtors who "knowingly or fraudulently, in or in connection with this case ... made a false oath or account." According to the Town, this paragraph squarely applies to Debtor's conduct in the present matter, since Debtor's chapter 7 Petition, sworn to under penalty of perjury, lists values for the Niles and East Lake Road Properties that are so unreasonably low as to justify a finding of deliberate falsehood.

Unlike the more narrow provisions of Code § 523(a) discussed above, the denial of discharge activated by Code § 727(a) is total, affecting all claims held by all creditors. As with Code § 523(a), the elements of a Code § 727(a) cause of action must be proved by the party objecting to discharge by the preponderance of the evidence. *See Gillickson v. Brown (In*

---

11. This point distinguishes the case at bar from *In re Allison,* the one authority cited by the Town in support of its Code § 523(a)(6) argument, in which the contempt judgment found nondischargeable was based on the debtor-defendant's wrongful use of the plaintiff's trade secrets. *See PRP Wine International v. Allison (In re Allison),* 176 B.R. 60 (Bankr.S.D.Fla.1994).

*re Brown),* 108 F.3d 1290, 1292 (10th Cir. 1997). To obtain a denial of discharge based on the false oath provision of Code § 727(a)(4), the objector must prove that (1) that the debtor made a statement under oath, (2) that such statement was false, (3) that the debtor knew the statement was false, (4) that the debtor made the statement with fraudulent intent, and (5) that the statement related materially to the bankruptcy case. *See Martin v. Key Bank (In re Martin),* 208 B.R. 799, 805 (N.D.N.Y.1997). With this standard in mind, the Court next considers in detail the two properties whose values Debtor allegedly misstated.

 *The East Lake Road Property.* 2887 East Lake Road is an irregularly-shaped vacant waterfront lot in Skaneateles, New York with a total area of 0.36 acres. The site has approximately 155 feet of lake frontage, a good view, and superior access to the water. Some improvements from the destroyed Second Home still remain on the site, including a dock, a fixed boat launching ramp, and a decorative retaining wall. At trial, Rhoda Scott testified that the septic and power connections to the lot were no longer functional, although she had no direct knowledge of whether these were destroyed during or after the demolition project. On Schedules A and C of his chapter 7 petition, Debtor lists the current market value of the property as $5,000.

Testimony regarding the market value of the site was given at trial by Stephen Regester, a qualified real estate appraiser retained by the Town. Regester concluded that the highest use of the parcel was as a single family home, and appraised its current market value, if sold vacant to a prospective builder at $215,000. Regester's appraisal was subject to a number of underlying assumptions and limiting conditions, listed in the appendix to his report. Among these was Underlying Assumption # 7, which stated that "all applicable zoning and use regulations and restrictions have been complied with, unless a nonconformity has been stated, defined and considered in the appraisal report." On cross-examination, Regester testified that if no variance could be obtained, a zoning restriction that would prevent the building of a home on the lot would reduce its value significantly, but was unable to express this decline of value in dollar terms.

Testimony by Williams and O'Shea established that a purchaser of the East Lake Road Property would not be able to build on it as of right, since the lot does not meet the minimum acreage requirements set by the applicable zoning regulations. In addition, it appears that the setback regulations would require any house built on the lot to have a depth at one point of no more than fifteen feet. While both O'Shea and Williams repeatedly pointed out that a buyer could apply for a variance from the Town Zoning Board of Appeals, no evidence was presented on the probability that such a variance would actually be granted.[12]

Turning to the *Martin* factors, it is not disputed that Debtor signed a bankruptcy petition listing the value of the property at $5,000. While this is less than five percent of the value asserted by the Town, the evidence presented at trial casts serious doubts on the Town's own calculations. Although the Regester appraisal was based on the assumption that the property could be used for a single-family home, the variances which would be required for any structure built on the East Lake Road lot are not trivial. The Town has provided no indication of the probability that such variances would actually be granted, nor has it established the market value that the lot would have if no new construction was

---

12. Although Justice Miller's order gives the Scotts a limited right to build on the lot according to the plans of the First Home, this has no bearing on the question of whether a purchaser would be able to build on it. As the Town concedes, this right is personal to the Scotts and does not run with the land. Of course, if the Scotts were to rebuild, the house could then be resold, but the Scotts are under no obligation to do this.

permitted. While the Court is not fully convinced of the Debtor's $5,000 valuation, the Town's evidence was insufficient to prove its falsity. As a result, the Court concludes that Debtor's valuation of the East Lake Road Property was not a false oath or account for purposes of Code § 727(a)(4)(A).

■ *The Niles Property.* Debtor also listed on his schedule of exempt property [13] an undivided half-interest in a 158.90 acre parcel of undeveloped land in the Town of Niles, New York, which he listed at a value of $4,050.00. The land, which has no current connection to electric, sewer, or gas utilities, is presently being used for agricultural purposes, and is taxed according to a current total assessment of approximately $81,200. According to credible testimony presented by Regester at trial and not contradicted by Debtor, this property has a market value of approximately $111,-000. Accordingly, the Court's analysis must focus not on whether Debtor's figure was false—for the Town has met its burden of proof on this point—but on whether Debtor's misstatement was knowing, fraudulent, and material.

■ Because a debtor is unlikely to admit to having made a deliberate misstatement, an objector may prove knowledge of falsity for purposes of Code § 727(a)(4)(A) by proving that the debtor acted with at least a reckless disregard for the truth. *See In re Chavin,* 150 F.3d 726, 728 (7th Cir.1998).

■ In support of its argument that Scott had at least constructive knowledge of the schedule's falsity, the Town directs the Court's attention to *Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner),* 208 B.R. 69 (9th Cir. BAP 1997). In *Weiner,* the court based its finding that a false statement was made knowingly on the fact that with no explanation, the debtors had listed in their schedules a ring purchased

for $6,000 and insured for $21,000 at only $2,500, the maximum amount that could be exempted under California law. The Court agrees that the facts in this case are closely analogous to *Weiner.* Debtor was at least constructively aware of one objective measure of value (the tax assessment), and provided no explanation for his substitution of a significantly lower figure. The Court is unable to discern any justification for the lower figure at all, apart from the fact that $4,050 is within the value limit of real property that can be exempted pursuant to N.Y.C.P.L.R. § 5206. As a result, the Town has met its burden of proving that Debtor's misstatement of the value of the Niles Property was made knowingly.

■ However, not all deliberately false statements are grounds for a denial of discharge. By the terms of Code § 727(a)(4)(A), the false oath or account must also have been made fraudulently. Since a debtor's fraudulent intent is often difficult if not impossible prove directly, courts have allowed objecting creditors to make their case by proving the debtor's intent with circumstantial objective evidence. *See Devers v. Bank of Sheridan, Montana (In re Devers),* 759 F.2d 751, 754 (9th Cir.1985). By far the most important of these circumstantial factors is whether the deception, if successful, would have operated to the benefit of the debtor or the detriment of the creditors, *see In re Agnew,* 818 F.2d 1284, 1287 (7th Cir.1987). As a result, while it is not specifically mentioned in the statute, materiality may be considered by a court as a proxy for fraudulent intent. *See In re Chavin,* 150 F.3d 726, 728 (7th Cir.1998) (holding that the requirements of Code § 727(a)(4)(A) are met if the Debtor makes a material misrepresentation which he knows to be false).

■ Although actual detriment is not required, *see Chalik v. Moorefield (In*

---

13. Since the truth or falseness of an oath is determined at the time it was made, and since the $4,050 value for the Niles Property continues to be listed on Schedule A, Debtor's attempt to amend Schedule C has no bearing on the Court's Code § 727(a)(4)(A) analysis.

*re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984), a materially false statement must have at least the potential to prejudice the rights of creditors. It is well-settled that the failure to disclose an asset's existence is almost always material, given the need for creditors to accurately identify and inventory the debtor's property. *See Casey v. Kasal*, 223 B.R. 879, 884 (E.D.Pa.1998). By contrast, there is very little case law dealing with situations like that in the present case, where the existence of an asset has been disclosed, and only its value has been falsified. Although this Court declines to adopt the holding that under-valuation alone is never a sufficient basis for the denial of discharge, *see Wines v. Wines (In re Wines)*, 114 B.R. 794, 797 (Bankr.S.D.Fla.1990), it cannot conclude that the Debtor's misstatement of the Niles value was material. Debtor's schedule identified the Niles Property as a "vacant property," and it was nowhere asserted that Debtor ever actually resided on the property. In addition, claimed exemption for the Niles Property was listed immediately below the claimed homestead for the East Lake Road Property, which was listed elsewhere in the Debtor's petition as his primary residence. Without going beyond the four corners of Debtor's petition, it should have been clear to any reader that the exemption claimed for the Niles Property was frivolous. The value chosen by Debtor for the Niles Property is thus wholly immaterial for all practical purposes, since the insertion of a correct value would neither make the exemption any less frivolous, nor make the creditors and the Chapter 7 Trustee any less likely to object to the claimed exemption. By contrast, the false statement in *Weiner* involved undervaluation in the context of a legitimate exemption claim, where the fact that the debtor's statement was plausibly true created a risk that the fraud would go undetected, to the detriment of all creditors. *Weiner*, 208 B.R. at 72.

The denial of a discharge is among the harshest sanctions that may be imposed against a debtor by this Court. Because it amounts to a refusal to give the debtor the fresh start that is so central to the purpose of the bankruptcy laws, Code § 727 authorizes this remedy only for those acts of misconduct that most threaten the integrity of the courts. And while Debtor's behavior in the present case is quite possibly sanctionable, it does not fall into the narrow class of misdeeds which the drafters of Code § 727 deemed serious enough to warrant the extraordinary remedy of the denial of discharge.

## E. *Debtor's Motion for Contempt Against James A. O'Shea*

Finally, Debtor has asserted that O'Shea should be held in contempt of court for violating the automatic stay by commencing a post-petition legal process to remove the motor home from the East Lake Road Property.

By operation of Code § 362(b)(4), the automatic stay does not block the "commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." This rule is subject to the implied exception that a governmental unit may not use its police power to retaliate against a debtor for filing for bankruptcy or for the purpose of recovering its own pre-petition claims. *See In re Massenzio*, 121 B.R. 688, 691 (Bankr. N.D.N.Y.1990).

Actions brought to enjoin land-use ordinances have been uniformly held to be among the police powers referenced by Code § 362(b)(4). *See Beker Industries Corp. v. Florida Land and Water Adjudicatory Commission (In re Beker Industries)*, 57 B.R. 611 (Bankr.S.D.N.Y. 1986). On review of the evidence presented at trial, the Court cannot conclude that the Town's commencement of the zoning action in July 1997 was in bad faith. Although the provisions of the zoning ordinance cited by Town's counsel are open to more than one possible reading, the Court

cannot conclude that the Town's interpretation of this law was unreasonable. Moreover, there are indications that the zoning enforcement process against the motor home was already underway by the time Town officials learned of Debtor's chapter 7 filing. Even in a dispute as bitter as the Scott–Skaneateles feud, this Court must operate from the presumption that public officials act in good faith, *see Beker*, 57 B.R. at 627. The burden was, therefore, on Debtor to prove that the zoning enforcement action was taken for an improper purpose. This he failed to do. The central premise of Debtor's contempt argument failing, the Court need not consider the remainder of his contentions.

Based on the foregoing, the Town's objection to Debtor's claim of a homestead exemption for the real property located at 2887 East Lake Road is sustained, and said exemption is DENIED.

The Town's objection to Debtor's claim of a homestead exemption for certain real property located in The Town of Niles is sustained, and said exemption is DENIED.

The Town's adversary complaint seeking to have its claim declared non-dischargeable pursuant to Code § 523(a)(6) and (7) is DENIED.

The Town's adversary complaint seeking to deny Debtor a discharge pursuant to Code § 727 is DENIED.

Debtor's Cross Motion seeking a holding of contempt against James A. O'Shea, Esq. is DENIED.

IT IS SO ORDERED.